WILLIAM L. RILEY and JUNE E. RILEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Riley v. Commissioner
Docket No. 8194-76.
United States Tax Court
T.C. Memo 1979-237; 1979 Tax Ct. Memo LEXIS 287; 38 T.C.M. (CCH) 940; T.C.M. (RIA) 79237; June 20, 1979, Filed Ronald D. Vanderhoef and James L. Norris, for the petitioners. Stewart C. Walz, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' income taxes for the years 1972 and 1973 in the amounts of $607.48 and $855.57, respectively. The sole issue for decision is whether petitioner William L. Riley is entitled to a deduction under section 215 [1] for payments made to his former wife pursuant to a divorce decree. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of filing their petition herein, William L. and June E. Riley, husband and wife, resided in Sheridan, Wyo. William L. Riley (hereinafter petitioner) and his former wife, the present Ruth F. Riley Adam (hereinafter Ruth), were married *289 on September 5, 1942, in Sheridan, Wyo. At the time of their marriage, petitioner had approximately $1,000 to $2,000 in assets that he had accumulated prior to the marriage, while Ruth had no assets at this time. Shortly after his marriage to Ruth, petitioner began working for Riley Motor Company (Riley Motors) which is an automobile dealership in Sheridan, Wyo., owned by his father. At the time of trial, petitioner was still employed by Riley Motors. During the early years of her marriage to petitioner, Ruth also worked occasionally at Riley Motors. She would answer the phone and help in the office two or three days a month. After her two daughters were born, Ruth continued to help around the office at Riley Mtors whenever someone else was ill or when extra help was needed to prepare the monthly statements. Ruth was paid for the work she did by Riley Motors. During their marriage, petitioner and Ruth acquired the following jointly owned property: Assets
Family Residence
$40,000
First Federal Savings Account
110
MAC Land Associates Joint Venture Interest
12,000
Bankers Life Insurance
16,000
General Motors Stock
720
Sheridan Center Stock
5,000
Savings Bond
500
Total Joint Assets
$74,330
Liabilities
Mortgage on Residence
$10,600
Riley Motors Account
12,700
Total Joint Liabilities
$23,300
Net Jointly Owned Property
$51,030
*290 In addition, petitioner's parents gave him shares of stock in Riley Motors as gifts on various occasions. Petitioner received a total of 420 shares in this manner and he alone was the record owner of all these shares. Petitioner was also the vested remainderman of a trust established by his father. The corpus of the trust was stock in Riley Motors that had been owned by petitioner's father. Moreover when Ruth's father died in 1966, she inherited several parcels of real property that were located near St. Louis, Mo. Title to these parcels was recorded in Ruth's name. After 28 years of marriage, Ruth was granted a divorce from petitioner on January 6, 1971. Incorporated into the decree of divorce was an agreement entered into by petitioner and Ruth on the preceding day, January 5, 1971. The parties and the Court granting the divorce characterized the agreement as a "Property Settlement Agreement and Stipulation." This agreement makes no reference to alimony or monthly support payments. It relates only to a division of the property acquired by the parties during their marriage. Through this agreement petitioner and Ruth intended to achieve an equal division of their marital *291 property. Under the terms of the agreement, petitioner and Ruth received the following property: Ruth
Assets
Family Residence
$40,000
One half of Fist Federal Savings Account
55
MAC Land Associates Joint Venture Interest
12,000
Buick Electra
6,500
Sheridan County Club Stock
125
St. Louis, Missouri Real Property
85,000
Total Assets
$143,680
Liabilities
Mortgage on Residence
$10,600
First National Bank (debt on Missouri
property)
7,500
Total Liabilities
$18,100
Net Property Received
$125,580
Petitioner
Assets
420 Shares of Riley Motors Stock
$100,000
One half of First Federal Savings Account
55
Banker's Life Insurance Policy
16,000
General Motors Stock
720
Sheridan Center Stock
5,000
U.S. Savings Bond
500
Total Assets
$122,275
Liabilities
Riley Motors Account
$12,700
Riley Motors (Buick Electra)
6,500
Attorney's Fees and Costs
5,050
Total Liabilities
$24,250
Net Property Received
$98,025
During the negotiation of this agreement, petitioner did not discuss any of the settlement terms with Ruth. The entire agreement was negotiated by the attorneys hired to represent petitioner and Ruth.In an *292 effort to achieve an equal division of the marital property the attorneys representing petitioner and Ruth excluded Ruth's separately owned real property in St. Louis, Mo., valued at $85,000 and petitioner's vested remainder interest in the Riley Motors stock held in trust, valued at $100,000 from the settlement. However, the 420 shares of Riley Motors stock, valued at $100,000, was treated as a marital asset.
Thus, excluding the St. Louis property the net amount of marital property awarded to Ruth was $48,080, [2] while the net amount of marital property received by petitioner was $98,025. In an effort to achieve a more equitable division of the marital property, the attorneys agreed that petitioner should pay Ruth the lump sum of $36,300. However, at the time of the divorce petitioner did not have the financial resources to pay Ruth the entire $36,300. Hence, under the terms of the "Property Settlement Agreement" petitioner was obligated to pay Ruth $36,300 in monthly installments of $300 over a period of 121 months with the first payment due on January 6, 1971. *293 Petitioner's obligation to pay Ruth the $36,300 was unconditional. Whether petitioner's or Ruth's income subsequently increased or decreased petitioner remained obligated to pay Ruth $300 per month. Nor would the fact that Ruth remarried affect petitioner's liability on these payments. In the event that Ruth died before she received the full amount, petitioner was obligated to make the balance of the payments to her administrator, heirs, or assigns. Moreover, the obligation was binding on petitioner's administrator, heirs, and assigns should he die before full payment was made. In addition, to secure his payment of the $36,300, petitioner was required to designate that the proceeds of his life insurance policies be applied first to the payment of any balance due at the time of his death. Finally, petitioner was required to place 210 shares of Riley Motors stock in trust which could be sold to pay any balance due at his death if the insurance policy proceeds were insufficient to pay the balance due. Petitioner regularly made the monthly payments of $300 during the years in issue. On his income tax returns for both 1972 and 1973, petitioner deducted $3,600 as alimony paid *294 to his former wife, Ruth. [3] In the statutory notice, respondent disallowed these deductions in their entirety. OPINION The sole issue for decision is whether petitioner is entitled to a deduction under section 215 for payments made to his former wife pursuant to a divorce decree. Section 215 allows a husband to deduct payments made to his wife if the payments are includible in her gross income under section 71. [4] Section 71(a) provides that if a wife is divorced or legally separated from her husband she must include in her gross income periodic payments received by her in discharge of a legal obligation which, because of the marital relationship, was imposed on her husband by the separation agreement or divorce decree. [5] However, it is well settled that where, upon divorce or separation, a husband makes payments in satisfaction of the *295 property rights of his wife, the amounts received by the wife are capital in nature and are neither includible in her gross income under section 71 nor deductible by the husband under section 215. , affg. a Memorandum Opinion of this Court; , affg. a Memorandum Opinion of this Court; , affd. ; , affd. without published opinion , cert. denied ; , affd. . *296 In the present case, the parties agree that the payments petitioner made to Ruth were periodic under section 71(c)(2). Thus the decisive question here is whether the payments made by petitioner were part of a property settlement or whether they were made in discharge of a legal obligation arising out of the martial relationship. This is a question which turns upon the facts, and not upon any labels that the parties or the court granting the divorce may have placed upon the payments. ; ;. Petitioner contends that he made the payments to Ruth in discharge of a legal obligation arising out of their marital relationship and, therefore, these payments constitute alimony. Consequently, he is entitled to a deduction under section 215 for the payments made during the years in issue. Respondent, on the other hand, argues that the payments were made by petitioner as part of a property settlement negotiated with his former wife and since property settlement payments are not includible in a wife's gross income *297 under section 71, petitioner is not entitled to a deduction under section 215. The dominant factor in determining whether the payments were part of a property settlement or whether they constituted alimony is the intent of the parties. ; The courts have also looked to other objective factors as aids in determining such intent. Factors held to be indicative of property settlement payments are (1) the presence of a fixed sum, (2) the fact that the payments are not related to the husband's income, (3) the continuation of the payments without regard to the remarriage or death of the wife, (4) the fact that the wife relinquished property interests in return for the payments, and (5) the fact that the husband's obligation to make the payments is secured. ;; ;; ; *298 ; ; . In the case at bar, the evidence as to whether petitioner and Ruth intended the payments to be alimony or part of a property settlement is, not surprisingly, contradictory. Nevertheless, it is clear from the testimony of both petitioner and Ruth that they intended to achieve an equal division of their marital property through the "Property Settlemet Agreement." Moreover, the objective factors indicative of a property settlement are present in this case. Under the terms of the agreement, petitioner was obligated to pay Ruth the Fixed sum of $36,300 in monthly installments of $300. This monthly payment was not subject to change should petitioner's or Ruth's income subsequently increase or decrease. In addition, petitioner was obligated to continue the payments even though Ruth remarried and if she died petitioner was required to make the remaining payments to her administrator, heirs, or assigns. Morover, Ruth relinquished her interest in a portion of the marital property in exchange *299 for the $36,300. Since the Riley Motors stock was treated by the parties as a marital asset, when all of the stock was awarded to petitioner this made his share of the marital property $98,025 while Ruth's share was only $48,080. Thus, in an effort to achieve a more equitable division of the marital property, Ruth was awarded the lump sum of $36,300. Finally, to secure his payment of the $36,300 petitioner was required to designate that the proceeds of his life insurance policies be applied first to the payment of any balance due at the time of his death. Petitioner was also required to place 210 shares of Riley Motors stock in trust which could be sold at his death if the proceeds from his insurance policies were insufficient to pay the balance due. Based on the record as a whole, we conclude that petitioner made the payments to Ruth as part of a property settlement and not in discharge of a legal obligation arising out of the marital relationship. Accordingly, we hold that petitioner is not entitled to a deduction under section 215 for the payments made to his former wife during the taxable years 1972 and 1973. To reflect the foregoing, Decision will be entered for *300 the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended, and in force during the years in issue.↩
2. Since Ruth's St. Louis, Missouri property was excluded, the indebtedness of $7,500 on this property was also excluded.↩
3. The Internal Revenue Service assessed deficiencies against Ruth for alimony payments received from petitioner during 1972 and 1973. Ruth paid the deficiencies and, thereafter, successfully prosecuted a claim for refund in the United States Districg Court. See .↩
4. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. -- In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income. ↩
5. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) Decree of divorce or separate maintenance. -- If a wife is divorced or legally separated from her husband under a decree or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.↩